WALTER YOUNG et al., Appellants, v. WARREN V. YOUNG et al.,
Appellees.

**ADVANCEMENTS:**   Oral Evidence of Equalization.   A receipt which evidences an advancement to a child is no obstacle to a showing by oral evidence that the parent, to whom the receipt was given, subsequently made advancements to all his other children equal to the amount of the receipt.

*Appeal from Adams District Court.*—H. K. EVANS, Judge.

OCTOBER 17, 1924.

THIS is a controversy between the children of W. A. Young, who died intestate on September 28, 1921, over the distribution of the estate of such decedent. The specific item in controversy is an alleged advancement of $4,500 to defendant Warren V. Young. A decree was entered, finding that such advancement to Warren V. Young had been fully equalized by like advancements to all the other children during the lifetime of the decedent. The plaintiffs have appealed.—*Affirmed.*

*Edmund A. Lee* and *George A. Johnston,* for appellants.

*Wisdom & Wisdom* and *W. E. Mitchell,* for appellees.

EVANS, J.—The children and heirs of the intestate, W. A. Young, were Walter Young, Warren V. Young, Ray Young, and Emma Phillips. The other parties named are the respective spouses of such children and heirs. On February 15, 1913, the intestate conveyed to his son, Warren V., 80 acres of land, free from all incumbrance. At the same time, he took from him the following receipt:

"February 15, 1913.

"Received of W. A. Young $4,500.00 advancement from the estate of my father.

(Signed)    W. V. Young."

The recitals of this receipt at the time it was given were indisputably true, in that the value of the land conveyed was in excess of the amount received. It was made to appear also that, in the year 1912, the decedent began the execution of a plan to divide his estate during his lifetime among his four children, and that, in the period between 1912 and 1915, inclusive, he did make division of substantially all of his estate with substantial equalities among his four children. The execution of this plan was begun by conveying to his son Walter 80 acres of land, subject to mortgages of $4,600. The next step was the conveyance to Warren V. of 80 acres of land, clear of all incumbrance. The two tracts of land thus conveyed were

substantially equal in value. As the division then stood, Warren V. had received a valuation of $4,500 or $4,600 greater than that received by the son Walter. This difference was measured approximately by the amount of incumbrance upon Walter's land. Subsequently, the decedent conveyed to his son Ray and to his daughter Emma Phillips 80 acres each. The tracts of land so conveyed were of substantially equal value to those previously conveyed to Walter and to Warren V. As the matter then stood, Warren and Ray and Emma had received a valuation of approximately $4,500 or $4,600 in excess of that received by Walter. Thereafter, the decedent conveyed to Walter 40 acres of land, clear of incumbrance, and conveyed another 40 acres of land in equal parts to the other three children, Warren V., Ray, and Emma. The parties agree that this made a substantially equal division in value as between the four children, with full allowance to Walter for the $4,600 of incumbrance upon his first conveyance. No other division of property was made until a few months prior to the death of the intestate, when he called his children together and divided among them equally the sum of $2,000 in cash. His only property remaining at the time of his death amounted in value to approximately $4,000 or less.

It was the contention of Warren on the trial of this case that the receipt executed by him had reference to the inequality existing in his favor as between him and Walter at the time the receipt was executed; that the subsequent advancements made by his father to the other three children were such as to fully equalize the advancement thus received by him. The trial court so found.

The appellants complain of the decree in that, in effect, it contradicted the receipt, and permitted the receipt to be contradicted by oral evidence. They argue that the receipt necessarily declared a payment of money in such amount to or on behalf of Warren V. by the intestate. They put forth also the hypothesis that the father might or could have paid indebtedness to such amount for this son.

We see in the evidence referred to no quality of contradiction of the receipt. The evidence in its entirety concedes the

receipt by Warren of advancements exceeding the amount of such receipt. But the evidence shows also that the other children received advancements to the same amount as Warren himself. Such evidence was pertinent and admissible, quite re-' gardless of whether any receipt had ever been executed by any of the parties. The suggestion that the decedent may have paid debts for his son was met by a very complete and detailed showing by the appellee Warren V., of every important business transaction that he had had, antedating the receipt, and a complete showing that he himself had paid every debt owed by him, at or about the time the same was due. The evidence discloses only one indebtedness of $150 for which the father had ever become liable as the signer of his note. The proof shows clearly that this note was paid by Warren himself. There is no suggestion of proof that the decedent had ever paid a debt for this son or had ever loaned him any money or had ever made him an advancement in any other form than here indicated. Out of an abundance of caution, the trial court took a submission of the case under advisement, and announced that he would withhold decision of the same for three weeks, and would reopen the case upon application of any party if additional proof were found in the meantime. After the expiration of such time, a formal decree was entered. The son Walter was named as administrator of the estate. He found the receipt in question in a safety box which contained many old papers, none of which had any present vitality or property value. This circumstance is not without its significance, and is entirely consistent with the receipt itself and with the evidence bearing upon its subject-matter. The evidence in its entirety not only sustains the decree of the trial court, but to our minds is very persuasive, and leaves little, if any, room for fair doubt that the advancements made by the intestate were intended to be, and were in fact, substantially equal, and that the equalizing of such advancements was accomplished by the intestate himself, subsequent to the execution of the receipt by Warren. The discovery of the receipt itself was a matter of surprise. Warren had forgotten it himself. None of the other children had ever heard of it. Prior to its discovery, they were all agreed that the

division made by their father was an impartial and equal one; and all of them are still so agreed, except for the surmise that this receipt represents some secret benefit which inured to the benefit of Warren, and which was unknown to any of the other children. We are satisfied from the record that the surmise is wholly without warrant.

The decree entered below is, accordingly, affirmed.— *Affirmed.*

ARTHUR, C. J., and PRESTON and FAVILLE, JJ., concur.